**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DISTRICT**

| | | |
|---|---|---|
| JOSE J. CABREJAS *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. AW-06-975 |
| ACCREDITED HOME LENDERS, INC. | * | |
| Defendant. | * | |
| | **** | |

**MEMORANDUM OPINION**

Jose J. Cabrejas and Isabel C. Cabrejas ("Cabrejas"), Patrick E. Price ("Price"), and Sylvia

M. Booze ("Booze") (collectively "Plaintiffs") on behalf of themselves and all others similarly

situated, bring this class action suit against Accredited Home Lenders, Inc. ("Accredited" or

"Defendant") for violations of Maryland law governing mortgage loans.  Currently pending is

Defendant's Motion to Dismiss Count II of Plaintiffs' Second Amended Class Action Complaint

[21].  The Court has reviewed the entire record, as well as the pleadings with respect to the instant

motion.  No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004).  For the reasons

stated below, the Court will GRANT Defendant's motion to dismiss.

**FACTUAL & PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to the non-movant.  Plaintiffs own

residential real estate in Maryland and obtained mortgage loans from Accredited in Maryland, or

obtained mortgage loans that were later transferred to Accredited in Maryland.  Defendant is a

nationwide Maryland licensed mortgage lender, including loans secured by secondary mortgages.

1

In late 2005, Accredited made loans to Plaintiffs that were secured by secondary mortgages.[1] In connection with these loans, Accredited charged Plaintiffs various fees related to the origination of the loans.[2] These fees included fees to cover the costs of underwriting the loan, the costs of settlement, and other costs that are a part of the loan origination. Plaintiffs claim that these charges were illegal and excessive, and that the fees were pro-rated over the term of the loans. Thus, Plaintiffs contend that the fees were disguised as principal and interest payments, wrongly increasing the required monthly payments.

On February 24, 2006, Plaintiffs filed a Class Action Complaint in the Circuit Court for Prince George's County, Maryland. An Amended Class Action Complaint was later filed on March

---

[1] Cabrejas obtained a secondary mortgage loan from Accredited on or about August 26, 2005, secured by a lien on their residence at 7 Halfpenny Court, Gaithersburg, Maryland 20886. The principal amount of the loan was $99,400.00 for a term of 15 years at 12.49%. Price obtained a secondary mortgage loan from Accredited on or about September 30, 2005, secured by a lien on his residence at 3 Dimely Court, Middle River, Maryland 21220. The principal amount of the loan was $58,000.00 for a term of 15 years at 8.99%. Booze obtained a secondary mortgage loan from Accredited on or about July 29, 2005, secured by a lien on her residence at 3081 Chester Grove Road, Unit D, Upper Marlboro, Maryland 20774. The principal amount of the loan was $35,700.00 for a term of 15 years at 11.75%.

[2] Accredited charged the following fees from each of the Plaintiffs:

| Type of Fee/Costs | Cabrejas | Price | Booze |
|---|---|---|---|
| Loan Origination Fee | $994.00 | $0.00 | $200.00 |
| Tax Service Fee | $66.00 | $66.00 | $66.00 |
| Flood Certification Fee | $5.00 | $5.00 | $5.00 |
| Underwriting Fee | $395.00 | $495.00 | $395.00 |
| Settlement/Closing Fee | $125.00 | $200.00 | $295.00 |
| Recording Service Fee | $0.00 | $0.00 | $45.00 |
| Title Insurance Binder | $35.00 | $50.00 | $50.00 |
| Document Preparation | $35.00 | $0.00 | $0.00 |
| Title Insurance | $300.00 | $25.00 | $35.00 |
| Assignment Fee | $40.00 | $0.00 | $0.00 |
| Doc Delivery/Express | $0.00 | $0.00 | $75.00 |
| *TOTAL AMOUNT:* | *$1995.00* | *$841.00* | *$1166.00* |

13, 2006. Plaintiffs served Accredited with an Amended Complaint (hereinafter "First Amended Complaint"). In Count I of their First Amended Complaint, Plaintiffs alleged that Accredited violated Maryland law, particularly, the Secondary Mortgage Loan Law, Md. Code Ann. Com. Law § 12-401 *et. seq.* ("SMLL"). Plaintiffs then alleged, in Count II of the First Amended Complaint, that Accredited engaged in an "unfair or deceptive trade practice" in violation of, Sections 13-101(1), (3), and (9) of Maryland's Consumer Protection Act, Md. Code Ann., Com. Law II § 13-101, *et. seq.* ("CPA"). On May 15, 2006, Defendant filed a Rule 12(b)(6) motion to dismiss Count II of Plaintiff's First Amended Class Action Complaint. On December 6, 2006, the Court issued an Order granting Defendant's motion and dismissing Plaintiff's CPA claim. Subsequently, on January 3, 2007, Plaintiffs filed a two-count Second Amended Class Action Complaint (hereinafter "Second Amended Complaint") alleging violation of Maryland mortgage lending laws, Md. Code Ann. Com. Law § 12-405 (Count I) and Md. Code Ann. Com. Law § 12-404 (Count II). Currently pending is Defendant's Motion to Dismiss Count II of Plaintiff's Second Amended Class Action Complaint [21]. The motion is ripe, and the Court now issues this opinion.

## STANDARD OF REVIEW

*Motion to Dismiss Under Rule 12(b)(6)*

Under Rule 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249,

3

251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Thus, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

## ANALYSIS

Plaintiffs allege that Accredited violated Maryland law by lending money to them in the form of balloon payment loans (e.g. loans involving a fixed interest rate with the debt maturing at the end of an interval shorter than the amortization schedule).[3] Defendant argues that the laws upon which

---

[3] Md. COMMERCIAL LAW Code Ann. § 12-404:
**(c) Amortization of loan.** -- A loan shall be amortized in equal or substantially equal monthly installments without a balloon payment at maturity, except that:
  **(1)** Payment on the loan may be reduced or suspended until all prior liens or encumbrances are wholly or partially satisfied;
  **(2)** A lender, including a seller who takes a mortgage or deed of trust to secure payment of all or a portion of the purchase price of a residence sold to a borrower, may make a loan for the

Plaintiffs base Count II of the Second Amended Complaint are preempted by the Alternative Mortgage Transactions Parity Act, 12 U.S.C. §§ 3801, *et. seq*. ("AMPTA"). Plaintiffs claim that preemption does not apply here. The Court believes that the clear language of the statute and the relevant case law suggest otherwise.

The Fourth Circuit has explained that the practical effect of the AMTPA's statutory scheme is to permit a non-federally chartered housing creditor to make a loan under federal law. *Nat'l Home Equity Mortg. Ass'n v. Face*, 239 F.3d 633, 635-36 (4th Cir. 2001).[4] Such a loan transaction becomes subject to federal regulations governing similar loans by federally chartered lending institutions. *Id*. Non-federally chartered housing creditors exercise this regulatory "option" by affirmatively complying with substantive federal regulations identified by the Office of Thrift Supervision ("OTS"). *Id*. When a lender does this, state laws that would normally apply to the loan are preempted. *See* 12 U.S.C. § 3803.[5] Therefore, the Court believes that if Accredited can show

---

purpose of aiding the borrower in the sale of the borrower's residence or the purchase of a new residence, and may create a balloon payment at maturity of this loan if the balloon payment is:
   **(i)** Expressly disclosed to the borrower;
   **(ii)** Agreed to by both the borrower and the lender/seller in writing; and
   **(iii)** Required to be postponed one time, upon becoming due, at the borrower's request, for a period not to exceed 6 months, provided that the borrower continues to make the monthly installments provided for in the original loan agreement, and no new closing costs, processing fees or similar fees are imposed on the borrower as a result of the extension

[4]The Court notes that the *Face* decision has been widely questioned, *See*, *e.g.*, *Glukowsky v. Equity One, Inc.*, 360 N.J. Super. 1 (App. Div. 2003); *Quicken Loans, Inc. v. Wood*, 449 F.3d 944 (9th Cir. 2006). Further, prepayment penalties, at issue in *Face*, are no longer preempted by OTS regulations. 67 Fed. Reg. at 60548 n.36. However, other decisions have cited the *Face* precedent for questions similar to that before the Court here. *See*, *e.g.*, *Ill. Ass'n of Mortg. Brokers v. Office of Banks & Real Estate*, 308 F.3d 762 (7th Cir. 2002).

[5]12 U.S.C. § 3803
**(c) Preemption of State constitutions, laws, or regulations**. An alternative mortgage transaction may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law, or regulation.

it made the balloon loans pursuant to federal regulations for alternative loan transactions, the Maryland laws under which Plaintiffs state their claim are preempted. *Id.*; *accord*, *Ill. Ass'n of Mortg. Brokers v. Office of Banks & Real Estate*, 308 F.3d 762, 765 (7th Cir. 2002).

In Count II of their complaint, Plaintiffs accuse Accredited of "[m]aking secondary mortgage loans to the Plaintiff and Class Members that were not amortized in equal or substantially equal monthly installments." Second Am. Compl. at 16. Plaintiffs go on to describe the loans as "balloon payment" loans. *Id*. Plaintiffs concede that the monthly payments of $1060.09 were equal. Pl.s' Opp'n at 17. Their allegation that Accredited charged payments that were not amortized in equal or substantially equal payments arises from the maturation of the debt after fifteen (15) years, resulting in a one time "balloon payment" substantially higher than the monthly payment.

The AMPTA preempts state laws affecting loans made pursuant to it. *Face*, 239 F.3d at 635-36. As explained in the language of the statute, the AMPTA preempts state laws for any "alternative mortgage transaction" that conforms to OTS regulations. 12 U.S.C. § 3803(C). Therefore, there are two criteria for Maryland law to be preempted in this case: (1) the loans made to Plaintiffs must classify as "alternative mortgage transactions" under the AMPTA, and (2) the loans made to Plaintiffs must conform to all relevant OTS regulations. *Face*, 239 F.3d at 637 ("Thus, to the extent that a non-federally chartered housing creditor makes a loan in compliance with federal regulations for alternative mortgage transactions, it may do so despite contrary state law.")

**1. The loans made to Plaintiffs classify as "alternative mortgage transactions."**

The AMTPA contemplates a loan, secured by residential real property, that "involv[es] a fixed-rate, but which implicitly permits rate adjustments by having the debt mature at the end of an interval shorter than the term of the amortization schedule." 12 U.S.C. § 3802(1)(B). Plaintiff does

6

not dispute that the loans made to the Plaintiffs were in conformity with this section of the AMTPA; therefore, the Court finds that the loans classify as "alternative mortgage transactions."

 **2. The loans made to Plaintiffs conform to all of the relevant OTS regulations.**

The OTS has specified that two of its regulations apply to state housing creditors who are granting loans under federal law. *See* 67 FR 60542, 60554.[6] Plaintiffs contend that Defendant failed to conform to only one of the relevant regulations, 12 C.F.R. 560.35.[7] This regulation requires that "[a]djustments to the interest rate shall correspond directly to the movement of an index." *Id.* However, the loans made to the Plaintiffs do not have an adjusting interest rate; instead, such adjustment is "implicitly permit[ed] ... by having the debt mature at the end of an interval shorter than the term of the amortization schedule." 12 U.S.C. 3802(B).  The Court believes that it would have been impossible for the terms of the loans to specify an index to which potential changes of

---

[6]§§ 560.220 -- Alternative Mortgage Transaction Parity Act.
**(a) Applicable housing creditors.** A housing creditor that is not a commercial bank, a credit union, or a federal savings association, may make an alternative mortgage transaction as defined at 12 U.S.C. 3802(1), by following the regulations identified in paragraph (b) of this section, notwithstanding any state constitution, law, or regulation. *See* 12 U.S.C. 3803.
**(b) Applicable regulations.** OTS identifies §§§§ 560.35 and 560.210 as appropriate and applicable for state housing creditors. All other OTS regulations are not identified, and are inappropriate and inapplicable for state housing creditors. State housing creditors engaged in credit sales should read the term "loan" as "credit sale" wherever applicable in applying these regulations.

[7] 12 C.F.R. 560.35
**(a)** For any home loan secured by borrower-occupied property, or property to be occupied by the borrower, adjustments to the interest rate, payment, balance, or term to maturity must comply with the limitations of this section and the disclosure and notice requirements of § 560.210 of this part.
**(b)** Adjustments to the interest rate shall correspond directly to the movement of an index satisfying the requirements of paragraph (d) of this section. A Federal savings association also may increase the interest rate pursuant to a formula or schedule that specifies the amount of the increase, the time at which it may be made, and which is set forth in the loan contract. A Federal savings association may decrease the interest rate at any time.

the interest rate might correspond because the change in interest rate is not explicit.[8]  The terms of the loans in question suggest that it may be necessary for the borrower to seek out a new loan at a new interest rate.[9]  The terms of the loan make it clear that Accredited may choose not to offer a new loan to the borrower when the balloon payment is due (and, similarly, the borrower is free to find a different lender).  Therefore, the Court finds that the change in the interest rate results from the borrower's obtaining a new loan (potentially from a third party), and the loan itself is at a fixed interest rate.  The Court believes that as a result it is impossible for the terms of the loans made by Accredited to specify what index the interest rate of a new loan might employ in determining a new interest rate.[10]  *See*, *e.g.*, 12 C.F.R. § 226.19(b)(2)(i)(requiring disclosure of a formula or index for interest rate variance only where such variance occurs within the loan being made); 12 C.F.R. Pt.

---

[8] Maryland courts define "[a] balloon payment [as one that] occurs at the end of a fixed-rate loan term when the loan principal is not fully amortized by the regular monthly payments. In other words, it is the payment of the unpaid principal and/or interest due in its entirety at the end of a loan term .... With respect to balloon payments, [the courts] have explained that, 'calculations of a pay-out figure based on a time period different from that over which the payments are to run are not unusual in modern real estate financing. This method of repayment results from a desire to have lower monthly payment requirements and still have the mortgage debt paid in full at an earlier date than would otherwise result.'" Drew v. First Guar. Mortg. Corp., 842 A.2d 1, 3 (Md. Ct. App. 2003) (quoting Paape v. Grimes, 260 A.2d 644, 647 (Md.Ct. App. 1970)).

[9] **TH[E] BALLOON RIDER** .... This loan is payable in full at the end of 15 year(s). You must repay the entire principal balance of the loan and the unpaid interest then due.  The lender is under no obligation to refinance the loan at that time.  *You will therefore be required to make payment out of other assets you may own, or you will have to find a lender willing to lend you the money at prevailing market rates*, which may be considerably higher or lower than the interest rate on this loan.  If you refinance this loan at maturity, you may have to pay some or all closing costs normally associated with a new loan, even if you obtain refinancing from the same lender.  Pl.s' Opp'n at 16-17 (emphasis added).

[10] The language of the loan does specify that the new loan will be made at "prevailing market rates."  The Court believes that this language is as close as Accredited may come in guessing the interest rate of a loan that the borrower may choose to take out in the future.

226, App. H (model forms include indexes for interest rate variance only where the interest rate of the loan in question changes on an annual basis). Since the loans made to Plaintiffs do not have a variable interest rate, the Court finds that the loans were made in conformity with 12 C.F.R. 560.35. As Plaintiffs' sole allegation is that Accredited did not make the loans in compliance with §§ 560.35, the Court finds that the loans conform with all of the relevant OTS regulations.

The Court believes that the loans made to Plaintiffs are properly classified as alternative mortgage transactions, and that they comply with the regulations of the OTS. Furthermore, because the loans were made pursuant to the AMTPA, the Court finds that Maryland law is preempted in regard to these loans. 12 U.S.C. § 3803(c); *Face*, 239 F.3d at 640. Thus, the second count of Plaintiffs' Second Amended Complaint does not set forth a cognizable claim and hence, is subject to dismissal.

## CONCLUSION

For the reasons stated above, the Court will GRANT Defendant's Motion to Dismiss Count II of Plaintiffs' Second Amended Class Action Complaint [21]. An Order consistent with this Opinion shall follow.

July 5, 2007              /s/
Date                      Alexander Williams, Jr.
                          United States District Court

9